UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| VINCENT WILLIAMS | CIVIL ACTION NO. 21-0441 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STATE OF LOUISIANA | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant's Motion to Dismiss (pursuant to Federal Rule of Civil Procedure 12(b)(6)) (Record Document 21). Having reviewed the complaint, as amended, and applicable law, the Motion to Dismiss will be **GRANTED** for failure to state a claim upon which relief can be granted.

**A. Factual Background**

Plaintiff Vincent Williams ("Williams") is a correctional officer at the David Wade Correctional Center ("DWCC"), a state penal institution operated by the Louisiana Department of Public Safety and Corrections near Homer, Louisiana. Williams currently holds the rank of Captain and alleges he has been passed over for promotion to the rank of Major in favor of less qualified employees. See Record Document 1 at 2–4. He alleges that the reason for this lack of promotion is his affiliation with an employee union. See id. He further contends that the practice at DWCC of discriminating against union members in promotion to higher ranks disproportionately impacts African-American employees, like himself, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). See id. at 5. In an amendment to his complaint, Williams alleges that DWCC additionally uses age as a

1

factor to discriminate in promotions, which also leads to a disproportionate impact on African-American employees in violation of Title VII. See Record Document 18 at 3.

### B. Procedural Posture

After service of Williams's complaint (styled a "Petition for Damages"), Defendant State of Louisiana[1] filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting sovereign immunity and failure to state a claim upon which relief can be granted. See Record Document 12. While opposing the Motion to Dismiss, see Record Document 14, Williams also obtained leave of court and filed an amendment to his complaint, clarifying the facts of some of his allegations and adding the age discrimination allegations. See Record Document 18. The State of Louisiana filed a subsequent Motion to Dismiss in response to the amendment of the complaint, which asserts generally the same bases for dismissal under Rule 12(b)(6) as the prior Motion to Dismiss. See Record Document 21. Williams has filed an opposition to the second Motion to Dismiss, see Record Document 27, and the State of Louisiana has replied, see Record Document 28. The factual sufficiency of Williams's claims will be evaluated based on the allegations in the original complaint, as amended by his subsequent filing, which detailed only changes rather than refiling a complete amended complaint in itself. See Record Document 18. Because the matter may be disposed of under the second, more recently filed, Motion to Dismiss, Defendant's earlier-filed Motion to Dismiss, Record Document 12, will be **DENIED AS MOOT**.

---

[1] While the complaint in this matter identifies the defendant as "State of Louisiana, Department of Public Safety & Corrections, David Wade Correctional Center," the Court notes that DWCC is a facility owned and operated by the Louisiana Department of Public Safety and Corrections, which is itself an executive cabinet-level state agency, and thus the State of Louisiana is the true party defendant. See Champagne v. Jefferson Parish Sheriff's Off., 188 F.3d 312, 313 (5th Cir. 1999); Jackson v. David Wade Corr. Ctr., No. 07-1420, 2008 WL 4500325, at *1 n.1 (W.D. La. Oct. 6, 2008).

2

### C. Pleading and Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While some specific causes of action have a heightened pleading standard imposed on them by the Rules or statute, that is not the case for claims under Title VII. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 995 (2002). The standard for the adequacy of all complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and

3

Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966 (citations omitted).

### D. Analysis

#### 1. Sovereign Immunity

The State of Louisiana, in its Motion to Dismiss, asserts sovereign immunity as a basis for dismissal. See Record Document 21 at 1. Defendant fails to address the specific applicability of sovereign immunity in its brief. See Record Document 21-1. However, the Court elects to first dispose of any possible challenge to the claims based on sovereign immunity.

The facts in Williams's complaint may be construed to raise discrimination claims on up to three theories: discriminatory treatment based on union status, discriminatory treatment based on age (per the amendments to the complaint), and a disparate-impact claim based on race. See Record Documents 1, 18. While the complaint identifies Title VII as a source of federal law supporting these claims, only the racial disparate-impact claim is cognizable under Title VII.

Any claim of discrimination based on union affiliation or support would have to be brought under the National Labor Relations Act of 1935 ("NLRA"). 29 U.S.C. §§ 151–169. As Defendant correctly notes, Title VII provides no protections based on union status. See Record Document 21-1 at 4. However, the NLRA's own definition of "employer" excludes states. 29 U.S.C. § 152(2); see also Davenport v. Wash. Educ. Ass'n, 551 U.S.

177, 181, 127 S. Ct. 2372, 2376 (2007). Thus, no federal claim can be maintained against the State of Louisiana based on discrimination regarding union affiliation or activities.

Similarly, while the amended complaint asserts that Title VII protects against age discrimination, see Record Document 18 at 1, this is not the case. Title VII prohibits only discrimination connected to "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The federal statute providing protection against age discrimination is the Age Discrimination in Employment Act of 1967 ("ADEA"). 29 U.S.C. §§ 621–634. However, while the ADEA does purport to be effective as to states as employers, see 29 U.S.C. § 630(b), the Supreme Court has ruled that the ADEA has not validly abrogated state sovereign immunity against suits by individuals. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91, 120 S. Ct. 631, 650 (2000). Thus, the State of Louisiana remains immune from any direct disparate treatment claims by Williams based on age discrimination.

### 2. Disparate-Impact Claim

Williams asserts in his opposition to the Motion to Dismiss that his claims do not rest solely on union membership or age, but that he is primarily asserting a disparate-impact claim under Title VII of the Civil Rights Act of 1964. See Record Document 27 at 1. Paragraph 27 of Williams's complaint, as subsequently amended, does assert that the defendant's practice of not promoting individuals based on union affiliation and age is a practice having a disproportionate impact on African-American employees in violation of Title VII. See Record Documents 1 at 5, 18 at 3. However, a bare assertion that is conclusory in nature cannot, by itself, support a plausible claim for relief. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

The standard for a prima facie disparate-impact claim under Title VII involves initially satisfying one requirement: "a threshold showing of a significant statistical disparity" to the disadvantage of a protected class caused by an identifiable, facially neutral employment practice. Ricci v. DeStefano, 557 U.S. 557, 587, 129 S. Ct. 2658, 2678 (2009) (citing Connecticut v. Teal, 457 U.S. 440, 446, 102 S. Ct. 2525, 2530 (1982)); see also McClain v. Lufkin Indus., 519 F.3d 264, 275–76 (5th Cir. 2008) (citing Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 994, 108 S. Ct. 2777, 2788–89 (1988)); 42 U.S.C. § 2000e-2(k)(1)(A)(i). Once this standard is met, the burden shifts to the employer to raise a defense that the practice is "job related for the position in question and consistent with business necessity." Ricci, 557 U.S. at 578, 129 S. Ct. at 2673 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).

The facially neutral employment practice identified by Williams is not promoting employees into upper management based on age and their affiliation with a union.[2] See Record Document 27 at 1. But Williams fails to identify a "significant statistical disparity" that suggests a disadvantage to African-American employees. See Ricci, 557 U.S. at 587, 129 S. Ct. at 2678. The facts pled in Williams's complaint fail to lead to any reasonable inference of a statistical disparity at all, at least based on race. To be fair, precise statistical analysis cannot be expected at the pleadings stage, as might be more appropriate at later stages of the litigation. See, e.g., Munoz v. Orr, 200 F.3d 291, 300 (5th Cir. 2000). However, Williams's pleadings, when accepted as true as they must be

---

[2] The Court recognizes that discriminating against union members or older employees in selection for promotion is hardly "neutral" in general and under certain other laws, but within the limited context of Title VII, which offers no protections based on union status or age, such a practice may be considered facially non-discriminatory for this stage of the Court's analysis.

6

at this point, must at least provide facts that lead to some justifiable inference that a statistical disparity exists such that discovery and further litigation is appropriate.

The complaint, as amended, includes only the following facts from which any racially discriminatory effects of Defendant's promotion policies may be discerned:

1) In October or November, 2019, Williams was passed over for promotion in favor of Alma Barnes, who is African-American, see Record Document 18 at 1;

2) In May, 2019, Williams was passed over for promotion in favor of Terrance Haulcy, who is African-American, see id.;

3) Williams is outranked by five other individuals in the Captain rank, identified in paragraph 20 of the amended complaint, see id. at 2, three of whom are Caucasian and two of whom are African-American; and

4) The committee which selects for promotion is composed of six individuals, three of whom are Caucasian and three of whom are African-American. See id.

From these facts, without any further context that suggests some impropriety, all that can be reasonably inferred is that the ranks of senior Captains and the membership of the promotion selection committee appear to be almost evenly split between African-American and Caucasian employees. There is nothing to suggest that this is abnormal or discriminatory, directly or indirectly, against African-American employees. When it comes to the specific promotions identified, Williams was passed over in favor of other African Americans, not those of any other race.

Williams is diligent in pointing out that all those African-American employees by whom he is outranked or who are on the selection committee are non-union members, and some of them are younger than him. See Record Document 18 at 1–2. However, in

order to support a disparate-impact claim under Title VII, there must be some effect that is quantifiable in terms of race only (for a racial disparate-impact claim). The fact that the employer's policies may work to the advantage of one subset of African-American employees (non-union members), at the expense of a different subset of African-American employees, is not racial discrimination. Such actions may be discriminatory in another context, but they do not represent an actionable racial discrimination claim under Title VII. In short, Williams's complaint alleges neither facts which lead to a justifiable inference that there is a statistically significant impact upon employees of one race as compared to similarly situated employees of a different race, nor that filtering employees for promotion based on union membership or age is causally connected to any such discrepancy if one exists.

### E. Conclusion

Since Williams's complaint fails to state a viable disparate-impact claim for racial discrimination under Title VII, his case must be dismissed. As Williams is a counseled plaintiff and has already utilized one opportunity to amend his complaint with leave of the Court, in the face of a previous motion to dismiss by the State of Louisiana raising the same defects, the dismissal will be with prejudice.[3]

---

[3] Because a dismissal with prejudice is effectively a decision on the merits, the Court must satisfy itself that it has subject matter jurisdiction to issue such a judgment on the merits and may examine such jurisdiction *sua sponte* at any point. Fed. R. Civ. P. 12(h)(3). The complaint in this action fails to include a charge sheet as submitted to the Equal Employment Opportunity Commission ("EEOC"), or to adequately allege the timing and contents of such an administrative charge of discrimination. Therefore, in addition to failing to state a viable claim for disparate-impact discrimination under Title VII, the complaint also fails to allege sufficient facts for the Court to determine if the asserted claim was properly exhausted administratively prior to suit being filed. See 42 U.S.C. § 2000e-5(f)(1). While the Supreme Court has been clear that *timeliness* of an EEOC charge is not jurisdictional, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982), Fifth Circuit jurisprudence is contradictory on whether the *exhaustion requirement* itself may be jurisdictional, or simply a precondition to suit. See Pacheco v. Mineta, 448 F.3d 783, 788 n.7 (5th Cir. 2006) (comparing cases, but finding it unnecessary to reach a definitive holding). This Court agrees with the prior analysis of Judge Trimble of this district in holding that failure to exhaust administrative remedies under Title VII is not a defect that implicates subject matter jurisdiction and believes the most

Accordingly, the Defendant's Rule 12(b)(6) Motion to Dismiss (Record Document 21) is **GRANTED**. Defendant's prior Motion to Dismiss (Record Document 12) is **DENIED AS MOOT**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 14th day of February, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

appropriate Fifth Circuit precedent supports this view. See Cormier v. Wal-Mart Stores, Inc., 145 F. Supp. 3d 666, 670 (W.D. La. 2015).